IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TESOROS TRADING COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-2478-L** |
| | § | |
| TESOROS MISTICOS, INC., | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Defendant's Motion for Summary Judgment or Alternatively, Partial Summary Judgment (Doc. 21), filed May 17, 2013; and Plaintiff's Motion for Partial Summary Judgment (Doc. 25), filed May 17, 2013.  After careful consideration of the motions, responses, replies, record, and applicable law, the court **denies** Defendant's Motion for Summary Judgment. Additionally, the court **denies in part** and **grants in part** Plaintiff's Motion for Partial Summary Judgment.

I.      **Procedural and Factual Background**

Tesoros Trading Company ("Plaintiff" or "TTC") filed its complaint against Tesoros Misticos, Inc. ("Defendant" or "TMI") on July 23, 2012, setting forth four claims: (1) trademark infringement, in violation of 15 U.S.C. § 1114; (2) unfair competition, in violation of 15 U.S.C. § 1125; (3) common law trademark infringement and unfair competition; and (4) state trademark dilution and injury to business reputation.  Plaintiff requests the court to: (1) issue injunctive relief against Defendant; (2) order the impounding of all alleged infringing copies of Defendant's products

that have Plaintiff's mark; (3) order general, special, actual, and statutory damages; and (4) award costs and attorney's fees.

Plaintiff maintains a physical location in Austin, Texas, where it keeps its wholesale distribution warehouse and a retail store on South Congress Avenue.  Plaintiff's products and services include "retail product offerings (specializing in folk or handmade art, jewelry, furniture, housewares and glass, floor coverings, and leather goods) as well as product selection, inventory, and distribution of products to retailers and wholesalers throughout the United States." Pl.'s Original Compl. ("Complaint") 1.  Plaintiff has two registered trademarks in the United States Patent and Trademark Office: (1) the mark "Tesoros" in connection with wholesale and retail store services, specializing in folk art and other items from Latin America, dated October 17, 1995, and based on a first use date of August 1989; and (2) the mark "Tesoros" in connection with wholesale and retail store services, specializing in folk or handmade art, jewelry, furniture, housewares and glass, floor coverings, and leather goods, dated May 6, 1997, and based on a first use date of August 1989.

Plaintiff contends that Defendant's advertising, services, and products make "pervasive unauthorized and infringing use" of Plaintiff's mark.  *Id*. at 4.  Plaintiff states that it became aware of Defendant's alleged infringing use when Plaintiff's owner saw Defendant at an industry trade show.  Plaintiff contends that it sent three "cease and desist letters" to Defendant on the following dates: (1) February 7, 2012; (2) April 30, 2012; and (3) May 17, 2012.

Plaintiff asserts that the mark "Tesoros" has "come to mean, and to be understood by customers, end-users and the public, to specify the products and services of Plaintiff."  *Id*. at 5.  Plaintiff contends that the materials Defendant uses are "likely to cause confusion, mistake, or deception as to their source, origin, or authenticity."  *Id*.  Plaintiff argues that it and Defendant offer

their products through similar channels such as trade shows and websites.  Additionally, Plaintiff contends that both parties sell their products in California and Texas.  Finally, Plaintiff contends that Defendant's unlicensed and unauthorized commercial use in commerce of Plaintiff's mark has caused dilution of the quality and value of Plaintiff's mark.

Defendant is a California corporation that serves as a "retailer and wholesale distributor of spiritual and esoteric products that include candles, oils, perfumes, incense, and spiritual/religious products." Def.'s Mot. for Summ. J. 4.  Its retail store is located in Los Angeles, California, and its wholesale distribution centers are in Hayward, California, and Dallas, Texas.  Defendant contends that its customers are "spiritual, religious, and superstitious individuals who come into the store with a specific need, for example luck or healing, or assistance finding love or a job." *Id.*  Defendant employs a "spiritualist" who helps customers with their needs.  Defendant has one registered trademark in the United States Patent and Trademark Office: an illustration drawing that includes words, letters, and a horseshoe with a hear and four leave clover.  Under the clover, there is stylized text that says, "Tesoros Misticos Cultural Heritage Candle Company."  This trademark was registered on December 13, 2011, in connection with aromatic oils, cologne, incense, incense sticks, perfumes, and candles.  This registered trademark was based on a first use date of January 2009.  Defendant contends that it does not engage in any advertising or exhibit at any trade shows.  Defendant does, however, have a website: www.tesorosmisticos.com.

Defendant denies all of Plaintiff's allegations and asserts the five following arguments: (1) TMI has been operating under its own federal registered trademark, "Tesoros Misticos Cultural Heritage Candle Company;" (2) there is no likelihood of confusion between the parties' respective registered marks, products, physical locations, and general business model; (3) the "Tesoros" mark

is generic and indistinct and therefore not subject to protection; (4) TMI is entitled to use the word "tesoros" as part of its name pursuant to fair use since it is being used to describe its product; and (5) there are no facts demonstrating a blurring or tarnishment of the "Tesoros" mark.

Defendant has filed a motion for summary judgment as to all of Plaintiff's claims, or, alternatively, partial summary judgment.  Plaintiff has filed a response to Defendant's motion, or, alternatively, a motion for partial summary judgment, seeking summary judgment on its trademark infringement claim and on Defendant's affirmative defenses of release, waiver, estoppel, and laches.

## II.      Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus.*

*Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.*  (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

### III.    Undisputed Facts

The following material facts are undisputed:

1.      Plaintiff is a Texas corporation that has been in business since 1989.  Plaintiff is a retailer and wholesale distributor that sells gift items, mainly consisting of folk art and crafts in addition to traditional items from over twenty different countries. Plaintiff's wholesale distribution warehouse and retail store are located in Austin, Texas.

2.      On April 27, 1992, Plaintiff filed an application with the USPTO seeking to trademark the word "Tesoros."  On October 17, 1995, the USPTO registered "Tesoros" as a service mark for "wholesale and retail services, specializing in folk art and other items from Latin America."

3.      On May 16, 1996, Plaintiff filed an application with the USPTO seeking to expand the breadth of its service mark "Tesoros."  On May 6, 1997, the USPTO registered "Tesoros" as a service mark for "wholesale and retail store services specializing in folk or handmade art, jewelry, furniture, housewares and glass, floor coverings, and leather goods."

4.      Defendant is a California corporation that has been in business since January 2009. Defendant is a retailer and wholesale distributor of spiritual products such as candles, oils, perfumes, incense, and religious products.  Defendant has a retail store in Los Angeles, California.  Defendant also conducts its wholesale business from the store in Los Angeles.  Defendant also has wholesale distribution centers in Hayward, California, and Dallas, Texas.

5.      On July 1, 2010, Defendant filed an application with the USPTO seeking to trademark an image that had a horseshoe with a heart and four leaf clover with the following text under the image: "Tesoros Misticos Cultural Heritage Candle Company."  On December 13, 2011, the USPTO registered the trademark for "aromatic oils, cologne, incense, incense sticks, perfumes . . . as well as candles . . . ."  Defendant's website is www.tesorosmisticos.com.

IV.     **Analysis**

A.      **Claim One: Trademark Infringement (15 U.S.C. § 1114)**

Defendant contends that Plaintiff has failed to allege any facts to support a claim of trademark infringement.  First, Defendant argues that it is using a federally registered mark that is presumptively valid under 15 U.S.C. § 1057(b), notwithstanding its use of the word "tesoros."  Second, Defendant also contends that there is no likelihood of confusion between the marks at issue.  Third, Defendant argues that Plaintiff's "Tesoro" trademark is generic as a matter of law since it refers to a common descriptive name for the word "treasures" in Spanish.  Fourth, Defendant is not using the word "tesoros" as a mark; rather Defendant is applying fair use to describe its products as "Mystic Treasures."  The court will now review each of Defendant's contentions.

1.      **Presumptive Validity of a Federally Registered Mark**

Defendant contends that since it has a federally registered mark (the illustration of the horseshoe, heart, and clover combined with the text "Tesoros Misticos Cultural Heritage Candle Company"), its mark should be presumptively valid.  Plaintiff counters that while Defendant may have a valid mark, Defendant often shortens its mark to "Tesoros Misticos," even though the actual mark contains the logo with the words "Tesoros Misticos Cultural Heritage Candle Company."

Plaintiff argues that when Defendant uses the website "tesorosmisticos.com," it is not using its registered mark. Plaintiff also argues that Defendant's mark is registered only for aromatic oils, cologne, incense, incense sticks, perfumes, and candles, and not for any manner of wholesale or retail store services. Plaintiff therefore contends that Defendant is using words from its logo in connection with broader store services. Finally, Plaintiff argues that its mark became incontestable pursuant to 15 U.S.C. § 1065, and it therefore has conclusive evidence of its exclusive right to use the registered mark.

A trademark registration by the USPTO is "prima facie evidence of the validity of the registered mark . . . ." 15 U.S.C. § 1115; 15 U.S.C. § 1057(b). If the mark, however, is found to be either generic or descriptive and lacking secondary meaning, the court may cancel it. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 232 (5th Cir. 2009) (citations omitted).[1]

Defendant's mark is registered by the USPTO. App. to Def.'s Mot. for Summ. J. 244. Therefore, the court will now determine whether the mark is generic or descriptive and lacking in secondary meaning. A generic term refers to the class of which a good is a member. *Xtreme Lashes, LLC*, 576 F.3d at 227 (citation omitted). A descriptive term provides an attribute or quality of a good. *Id*. (citation omitted). Generic terms receive no protection, and descriptive terms receive protection only if they have secondary meaning. *Id*. (citation omitted). Finally, a suggestive term

---

[1] There has recently been significant discussion whether the prima facie evidence provided by the certificate of registration is sufficient to establish a question of material fact that could not be resolved on summary judgment. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 238 (5th Cir. 2010). *Amazing Spaces* falls in the context of a plaintiff moving for summary judgment and a defendant responding with its trademark registration. The Fifth Circuit agreed with the Fourth Circuit when it rejected the contention "'that the issuance of a certificate of registration is, by itself, sufficient to create a jury issue on the validity of the mark in question because it embodies the PTO's informed opinion that the mark is registrable.'" *See id*. (citation omitted). In other words, when a plaintiff files a motion for summary judgment against a defendant for trademark infringement, the mere fact that the defendant has a federally registered trademark may not be enough to defeat the motion.

**Memorandum Opinion and Order - Page 8**

suggests, but does not describe, an attribute of the good and requires the consumer to use imagination to apply to the mark to the good. *Id*. (citation omitted). Descriptiveness is construed broadly. *Id*. at 232. Some of the indicators of descriptiveness include the following:

> (1) the mark's dictionary definition corresponds with its meaning and context; (2) upon hearing the mark, one need not use imagination, thought and perception to reach a conclusion as to the nature of goods; (3) competitors would be likely to need the terms used in the trademark in describing their products; and (4) others have used the term in marketing a similar service or product.

*Id*. (quotation marks and citation omitted). The court should examine the context in which a term appears, and the audience to which it is directed, when determining eligibility for protection. *Id*. The court also views a multi-word mark as a unitary whole in its given arrangement and does not parse apart the individual terms. *Id*.

The court has no difficulty determining that Defendant's mark is not generic or descriptive and lacking in secondary meaning. First, the mark's dictionary definition does not necessarily correspond with its meaning and context. "Tesoros Misticos Cultural Heritage Candle Company" implies a simple candle company. The translation of "Tesoros Misticos," however, does not immediately provide meaning and context. At first glance, the audience may not know exactly what type of candle company Defendant is. Second, when one views the logo or hears the mark, one would have to use some imagination to determine exactly what type of candle company Defendant is or what other goods Defendant provides. Third, competitors would not need the terms used in the mark to describe their product. Competitors could of course argue that they may need an individual word in the mark to describe their mark, such as "tesoros," "misticos," "cultural," or "candle"; however, the court views the mark in its entirety. Finally, others have not used the term in marketing a similar product. Again, the court views the mark as a whole and determines that others have not

used the combined logo and phrase in their marketing.  Even if Defendant's mark were considered descriptive, the court determines that the mark does have a secondary meaning, given the uniqueness of the logo and that customers associate a certain spiritual or religious context with the combination of "Tesoros Misticos" and "Cultural Heritage Candle Company."

Plaintiff also contends that Defendant uses the phrase "Tesoros Misticos" in its web address and that this shortened version of its mark is not Defendant's registered mark.  While this mark would also be considered distinct, the court does have some concerns.  "Tesoros Misticos" is not Defendant's registered mark, and yet this is the term (even without the logo) that Defendant often uses.  The court will address this concern in its analysis of the mark's likelihood of confusion with Plaintiff's mark.

Plaintiff also argues that Defendant used its mark outside of its protected area to also include wholesale and retail services.  Since Defendant does have a valid mark for items such as aromatic oils, cologne, incense, incense sticks, perfumes, and candles, it certainly has the right to sell those items in a wholesale or retail context.  Second, Plaintiff has not provided any proof that Defendant has tried to pursue the unique "wholesale and retail services" that Plaintiff provides.

Finally, Plaintiff argues that its mark is incontestable.  The mark's incontestability does not have any bearing on the validity of Defendant's mark when Defendant's mark is for a different area of products.  In other words, Plaintiff's mark "Tesoros" is incontestable; however, that does not mean that Defendant cannot also use the word "tesoros" in its specific trademarked logo given that the court views the mark in its entirety.

**Memorandum Opinion and Order - Page 10**

Therefore, the court determines that Defendant's federally registered mark is presumed valid; however, the court does have some significant concerns that Defendant often shortens its mark to the text "Tesoros Misticos," a mark that Defendant has not registered.

**2.      Likelihood of Confusion**

When analyzing a trademark infringement action, the most important question is whether a mark is likely to cause confusion with another. *Xtreme Lashes, LLC*, 576 F.3d at 226 (citing *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985)). The term "likelihood of confusion" means more than a mere possibility; rather, Plaintiff must demonstrate a probability of confusion. *Id.* (citation omitted). The following factors should be considered when determining likelihood of confusion: (1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers. *Id.* at 227. No factor is dispositive. *Id.* Finally, while likelihood of confusion is typically a question of fact, summary judgment may be proper if the record compels the conclusion that the movant is entitled to judgment as a matter of law. *Id.* (quotation marks and citation omitted).

**a.      Type of Trademarks**

The court first looks at the type of trademarks at hand. Plaintiff's mark, "Tesoros," is a suggestive mark. The term essentially suggests, but does not describe, an attribute of the goods. The consumer must exercise some imagination to apply the trademark to the good. To a non-Spanish speaker, this mark would be considered more of an arbitrary mark since the consumer may not be able to make the connection between the word itself and the products being offered. To a Spanish-speaker, this mark would be more of a suggestive mark since the consumer would be required to use

his or her imagination to apply the trademark ("treasure") to the goods that Plaintiff sells.[2] Defendant's mark, the illustration combined with "Tesoros Misticos Cultural Heritage Candle Company," is also more of a suggestive mark.   While it seems clear that candles are sold by Defendant, the mark does not describe the type of candles or other additional goods that are offered by Defendant.   Additionally, Defendant often uses the mark, "Tesoros Misticos," and this mark would also qualify as a suggestive mark since (1) a non-Spanish speaker would not know exactly what the mark referenced and (2) a Spanish-speaker still may not know what would be included under "Mystical Treasures."[3]   For summary judgment purposes, the relevant marks are entitled to protection since they are neither general nor descriptive and without a secondary meaning.

### b.   Trademark Similarity

The court next looks at mark similarity.  Mark similarity is determined by comparing the marks' appearances, sounds, and meanings.  *Id*. at 228.  Given that Defendant's mark involves an actual logo with an illustration of a horseshoe and a clover (in addition to the text "Tesoros Misticos Cultural Heritage Candle Company"), the court determines that no reasonable person could be confused.  Plaintiff's mark only includes the word, "Tesoros," and does not include any illustration. Defendant, however, often shortens its mark to "Tesoros Misticos" and does not include the

---

[2] The doctrine of foreign equivalents governs these types of disputes.   *See Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439 (5th Cir. 2000).  This doctrine requires courts to translate foreign words into English to test them for genericness or descriptiveness.  *Id*. at 433.  The United States refuses trademark protection to generic foreign words.  *Id*.  While one might be inclined to then determine that "Tesoros," receives no protection, "Tesoros" ("treasure" in English) is not being used as a general mark in this context.  It is not actually describing *treasure*, but rather, it is describing "wholesale and retail store services specializing in folk or handmade art, jewelry, furniture, housewares and glass, floor coverings, and leather goods."  Therefore, the consumer must use his or her imagination to apply the trademark to the goods.  "Tesoros," in this case, is a suggestive mark.

[3] While the court previously explained that Defendant's mark (the illustration combined with "Tesoros Misticos Cultural Heritage Candle Company") was presumed valid given that it was federally registered, the court will also look at the mark "Tesoros Misticos" since Defendant uses this shortened term.

**Memorandum Opinion and Order - Page 12**

illustration logo.  *See* Pl.'s App. in Supp. of Its Mot. for Partial Summ. J. ("Pl.'s App.") 129-168.

When placed side by side, there seems to be a probability that consumers could be confused between

"Tesoros" and "Tesoros Misticos."  The court determines that this factor weighs in favor of finding

a likelihood of confusion.

### c.   *Product Similarity*

Third, the court looks at product similarity.  Plaintiff's products include "wholesale and retail

store services specializing in folk or handmade art, jewelry, furniture, housewares and glass, floor

coverings, and leather goods."   Defendant's products include "aromatic oils, cologne, incense,

incense sticks, perfumes . . . as well as candles."  Plaintiff contends that "folk art" can include many

items with religious and cultural significance.   Additionally, Plaintiff contends that customers

(specifically Colvin English, who works with handcraft products and artisan products around the

world) believe that if a company was advertising that it sold books, candles, incense, oils, and

spiritual items, that company must be in a similar market to Plaintiff.   Additionally, Plaintiff argues

that Catherine Yronwode, who operates Lucky Mojo Curio Company, has bought items from

Plaintiff for her spiritual supply and folk art business.   The items that Yronwode has purchased from

Plaintiff include: altar cloths, hand tiles, mirror tiles for reversing spells, love stones, ornaments, a

gypsy sash, vials, flasks, crosses, candles, "holy cards," ash catchers, and statues.  Pl.'s App. in Supp.

of Its Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp. App.") 37-38.  Finally, Plaintiff contends that

Frederick Burke, a full-time practitioner of folk magic, has purchased some of Plaintiff's items from

Plaintiff directly and from Lucky Mojo.[4]

---

[4] Defendant objects to parts of Plaintiff's Appendix that were used in support of its Motion for Partial Summary Judgment, specifically various third-party declarations made by Colvin English, John Kennedy, Sallie Ann Glassman, Alejandro Aldama, Philip Shirk, Frank Minella, and Catherine Yronwode. Defendant contends that these declarations are without any objective fact and contain speculation and legal conclusions.  Defendant contends that these are improper

Jonathan Williams ("Williams"), Plaintiff's President and owner, states that "with the exception of oils and spiritual waters[,] Tesoros Trading sells the exact type of products listed on the Tesoros Misticos website page."  Pl.'s App. 8; *see also* Pl.'s App. 169-72 (demonstrating the overlapping items that each party sells).  Plaintiff's mark covers "folk art," which arguably includes a substantial amount of spiritual and religious items.

This factor weighs in favor of Plaintiff and the determination of a likelihood of confusion.

### d.      *Outlet and Purchaser Identity*

The fourth factor that the court considers is outlet and purchaser identity.  When asked about the clientele for its retail location, Williams (Plaintiff's president) stated: "We have a mix of all kinds of people at our store.  We have Austinites, tourists.  The location is what was historically a Hispanic area, so we have a lot of Hispanics, and we have a lot of Anglos and we have plenty of people from out-of-town."  Def.'s App. in Supp. of Its Mot. for Summ. J. ("Def.'s App.") 113.  When asked about the clientele for its wholesale business, Williams stated that the company sells to over a thousand retail stores in the United States.  *Id*. at 114.  He stated that in the last 10 years, it sold to more than 1400 stores in California.  *Id*. Williams also stated that it sells mainly to small stores that are individually owned, museum shops, and galleries.  *Id*.  He also said that Plaintiff sometimes sells to larger businesses like Pottery Barn and Whole Foods. *Id*.  Williams said that for the most part, Plaintiff sells to "small, independently owned gift stores." *Id*.  Plaintiff also contends

---

lay opinions and irrelevant. Additionally, Defendant states that each declaration is similar in language and that it is clear that each individual did not draft his or her own declaration.  The court **sustains** the objection as it relates to these declarants stating that another product with "Tesoros" in its title would lead to a likelihood of confusion, as this is a legal conclusion.  The court **overrules** the objection as it relates to these declarants simply stating that *they* themselves would be confused if they saw another company with "Tesoros" in the name selling folk or religious arts.  Additionally, these declarations are relevant in that they demonstrate that individuals viewed Plaintiff as a provider of folk and religious art.

that it also sells to companies in the spiritual supply and folk art business in addition to practitioners of folk magic. *See* Pl.'s App. 217-228. Plaintiff's only retail store is in Austin, Texas; however, it has attended many gift and trade shows across in the country: California Gift Show at the Los Angeles Convention Center, New York Gift Show, San Francisco Gift Show, Sante Fe International Folk Art Market, Museum Store Association Show, and others. Pl.'s App. 6-7.

William Gershon ("Gershon"), the owner and CEO of Defendant, states that Defendant's "typical retail customers consist of spiritual, religious, and superstitious individuals who come into the store with a specific need, for example luck or healing, or assistance finding love or a job." Def.'s App. 239. Gershon states that "[t]hese customers believe that the products [Defendant] sells have special properties that address their myriad needs if properly used . . . ." *Id*. Gershon also states that Defendant's customers are not tourists but are rather individuals who truly believe in and rely on the "spiritual and mystical powers" of its products. Finally, Gershon states that its wholesale customers primarily consist of "'botanicas,' i.e., a retail store that sells folk medicine, religious candles, and other products regarded as magical, that sell to the customer base [previously described]." *Id*. at 240. Defendant has a retail store in Los Angeles, California. Additionally, Defendant maintains a wholesale distribution center in Hayward, California, and Dallas, Texas.

That Plaintiff's only retail store is in Austin, Texas, seems to weigh against the finding of a likelihood of confusion. Additionally, when asked, "[Y]ou're not aware of any customers that Tesoros Trading Company and Tesoros Misticos share, correct?", Williams responded, "I'm not aware. We   I'm sure there are some, but I'm not aware who they are." Def.'s App. 113. Although Williams may not be *aware* of the customers that are shared, it seems clear that both Plaintiff and Defendant market to similar types of customers. The court notes that Plaintiff serves a broader array

of individuals given there sizeable offerings; however, Plaintiff and Defendant both overlap in the goods that they provide.  Even though Plaintiff does not have a retail store in California, it has sold to many wholesalers in the area and has a strong presence at trade shows in the area.  The court determines that this factor weighs in favor of a likelihood of confusion.

e.    *Advertising Media Identity*

The fifth factor the court analyzes is both parties' advertising media identity.  Plaintiff advertises by using the following: (1) its website; (2) its catalogs; (3) industry trade shows; (4) sponsorships on a Latin-American music show that airs on a local public radio station; (5) post cards; (6) emailers; (7) occasionally in an anthropological magazine or local newspaper; and (8) a feature completed by a magazine.  *See* Def.'s App. 149-156.  Defendant does not engage in any advertising. *Id.* at 240.  It will sometimes send representatives to attend a local show, but it does not exhibit at any trade shows, including gift shows.  *Id.* at 240-41.  Additionally, Defendant does not engage in any direct mail campaigns; however, it sends postcards to existing customers and catalogs upon request. *Id.* at 241.  Additionally, Defendant has a website (www.tesorosmisticos.com) that consists of a homepage with the federally registered trademark,[5] a list of its products, and its contact information.  *Id.*  This evidence seems to suggest that the parties use different advertising and marketing channels.  The court therefore determines that this factor does not suggest a likelihood of confusion.

---

[5] The court notes that even though Defendant contends that the current website page features the "federally registered trademark," the featured part of the page is the illustration and the text "Tesoros Misticos.com."  In other words, the text that is actually federally registered ("Tesoros Misticos Cultural Heritage Candle Company") is not prominently featured.

**Memorandum Opinion and Order - Page 16**

*f.*      *Defendant's Intent*

The sixth factor for the court to consider is Defendant's intent.  A junior user (Defendant) must avoid choosing a mark that may cause confusion with the senior user's (Plaintiff) mark. *Xtreme Lashes, LLC*, 576 F.3d at 229.  Defendant contends that there is no evidence that it knew Plaintiff existed at the time it chose the name "Tesoros Misticos, Inc."; however, some of Defendant's acts seem to indicate that it may have intended to draw a connection to Plaintiff. Gershon (Defendant's owner) was previously a partner for Indio Products, Inc.  Pl.'s App. 231.  Indio Products was a business involved in "esoteric and religious selling of wholesale and retail art." *Id*. at 232.  Gershon said that there was no significant difference between "the product Indio Products, Inc. did and what Tesoros Misticos, Inc. did." *Id*. at 232, 272.  When Gershon was still a part of Indio Products, Plaintiff sold Indio Products a variety of goods. *See id*. at 173-213.  Gershon then established "Tesoros Misticos, Inc." Gershon states that he did not recall whether Indio Products bought goods from Plaintiff. *Id.* at 238.  He also stated that he had no knowledge that Plaintiff was in the same field and stated that he did not have any knowledge of Plaintiff at the time. *Id*. at 237.

While there is no direct evidence of Defendant's intent to take Plaintiff's mark, the court determines that there are enough facts to create a genuine dispute of material fact.  Gershon purchased items from Tesoros Trading Company and then proceeded to establish a new company called Tesoros Misticos, Inc., where Gershon continued to sell similar items to the one's that he bought from Tesoros Trading Company.  This factor weighs in favor of finding a probable likelihood of confusion.

g.      *Actual Confusion*

The seventh factor that the court must consider is whether the presence of Plaintiff and Defendant's marks have created actual confusion.  Plaintiff states that "[t]he summary judgment record does not contain evidence that a particular customer thought Tesoros Misticos was actually Tesoros Trading Company, or vice versa."  Pl.'s Br. in Supp. of Mot. for Partial Summ. J. 13. Therefore, this factor weighs in favor of finding that there is not a likelihood of confusion.[6]

h.      *Care Exercised by Potential Purchasers*

The final factor that the court must consider when analyzing the likelihood of confusion is the level of care exercised by potential purchasers in Plantiff and Defendant's markets.  "Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion."  *Xtreme Lashes, LLC*, 576 F.3d at 231 (quoting *Board of Supervisors for La. State Univ. Agric. and Mech. College v. Smack Apparel, Co.*, 550 F.3d 465, 483 (5th Cir. 2008)). The evidence is clear that the products sold by Plaintiff and Defendant are generally inexpensive, and customers will therefore not exercise a high degree of care.   This factor weighs in favor of finding a likelihood of confusion.

After weighing all of the factors, the court notes that the following factors weigh in favor of finding confusion: (1) trademark similarity; (2) product similarity; (3) the outlet and purchaser identity; (4) Defendant's intent; and (5) the care exercised by potential purchasers.  Additionally, the

---

[6] While Plaintiff admits that there has been no actual confusion, the court notes that in Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff discusses the observations of Frederick Burke, who stated that he had the following thoughts upon hearing about Tesoros Misticos: "Well, it appeared a couple of years back I guess, and I thought, 'Well, good.  I've got a closer source for Tesoros products.'  My assumption was that Raul, at Mystic Products, and Tesoros had teamed up for some sort of venture.  And after I looked further, it became clear that that wasn't the case. But that was certainly what I assumed."  Pl.'s Resp. to Def.'s Mot. for Summ. J. 8; Pl.'s Resp. App. 45.  Plaintiff notes that Burke's confusion was subsequently resolved.

following factors are neutral in terms of finding confusion: (1) type of trademarks and (2) advertising media identity.  Finally, the lack of actual confusion weighs in favor of not finding confusion. Therefore, the court finds that there is a genuine dispute of material fact as to whether there is a probable likelihood of confusion.

### 3.     Generic Nature of Plaintiff's Mark

Defendant also argues that Plaintiff's mark ("Tesoros") is generic as a matter of law since it refers to a common descriptive nature for the word "treasures" in Spanish.  The court rejects this contention, as demonstrated by its analysis above in Section IV, (A)(2)(a) and footnote 2.  A generic term refers to the class of which a good is a member.  *XTree Lashes, LLC*, 576 F.3d at 227 (citation omitted).  In other words, "marks that constitute a common descriptive name are referred to as generic." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194 (1985).  While "Tesoros" (or "treasure") is a general word, the term is not describing what every individual would view as actual "treasure."  Rather, the consumer has to use his or her imagination to apply the trademark ("treasure") to the goods (folk art and other housewares goods).  For these reasons, and given that Plaintiff's marks have become incontestable as stated above, the court determines that Plaintiff's mark is not a generic mark and is therefore valid.

### 4.     Fair Use

Defendant contends that it is not using the word "Tesoros" as a mark; rather, it is applying fair use to describe its products as "Mystic Treasures."  The court rejects this argument.

Pursuant to 15 U.S.C. § 1115(b)(4), a possible defense to a claim of trademark infringement is:

> That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's

> individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin . . . .

Defendant, however, is not using "Tesoros" in a descriptive manner; rather, it is suggestive. As the court has discussed above, "Tesoros" or "treasures" does not explicitly describe what Plaintiff or Defendant is selling. The consumer must use his or her imagination to apply the trademark to folk art and religious items. Simply stated, the word "Tesoros" or "treasures" is not necessary to describe the products that Defendant sells.

Accordingly, for the reasons mentioned above, the court determines that there is a genuine dispute of material fact as to Plaintiff's trademark infringement claim.[7]

## B. Claim Two: Federal Unfair Competition (15 U.S.C. § 1125)

Defendant moves for summary judgment on Plaintiff's claim of federal unfair competition. Pursuant to 15 U.S.C. § 1125(a)(1)(A),

> [any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

Based on the analysis above and given that the court found that a genuine dispute of material fact existed as to the likelihood of confusion within Plaintiff's trademark infringement claim, the court

---

[7] The court denies Defendant's request for the court to take judicial notice of the four provided documents, and Plaintiff's objections are therefore denied as moot; however, even if the court would have taken notice of Defendant's provided documents (for example, the "trademark electronic search system" results showing that over 200 entities have the word "tesoros" in their name), its decision would be the same.

**Memorandum Opinion and Order - Page 20**

determines that a genuine dispute of material fact exists as to Plaintiff's federal unfair competition claim.

### C.      Claim Three: Common Law Trademark Infringement and Unfair Competition

Defendant also moves for summary judgment on Plaintiff's common law trademark infringement and unfair competition claim.  "The gravamen for any action of trademark infringement or common law unfair competition is whether the challenged mark is likely to cause confusion." *Marathon Mfg. Co. v. Energize Products Corp.*, 767 F.2d 214, 217 (5th Cir. 1985).  Based on the court's determinations as to Plaintiff's federal trademark infringement and unfair competition claims and its finding that a genuine dispute of material fact exists as to the likelihood of confusion between Plaintiff and Defendant's marks, the court finds that a genuine dispute of material fact exists as to Plaintiff's common law trademark infringement and unfair competition claims.

### D.      Claim Four: State Trademark Dilution and Injury to Business Reputation

Defendant also moves for summary judgment on Plaintiff's claim of state trademark dilution and injury to business reputation.  Plaintiff claims that Defendant's unlicensed and unauthorized commercial use of Plaintiff's mark has caused dilution of the quality and value of Plaintiff's mark. Plaintiff argues that Defendant's conduct "blurs the public's exclusive identification of [Plaintiff's] [mark with Plaintiff Tesoros and dilutes the value of Plaintiff TESOROS's intellectual property." Compl. 10.

Defendant contends that Plaintiff's mark is not distinct for the purposes of these state law claims and also argues that there is no evidence of blurring or garnishment.

> A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is

> competition between the parties or confusion as to the source of
> goods or services.

Tex. Bus. & Com. Code § 16.29.   The court has already determined that Plaintiff's mark is distinctive.   While the term "Tesoros" or "treasure" could be used to describe a variety of items, the term is suggestive in this context because it requires the consumer to take a leap from the term itself to what it references, which is folk art, housewares, and other goods.   A likelihood of dilution can be caused by either "(1) blurring, a diminution in the uniqueness or individuality of the mark or (2) garnishment, an injury resulting from another's use of the mark in a manner that tarnishes or appropriates the goodwill and reputation associated with the plaintiff's mark." *E. & J. Gallo Winery v. Spider Webs, Ltd.*, 286 F.3d 270, 279 (5th Cir. 2002).

Based on the court's previous determination that a genuine dispute of material fact exists as to whether the presence of Defendant's mark could lead to the likelihood of confusion with Plaintiff's mark, the court finds that there is a genuine dispute of material fact as to whether blurring has occurred.   The court has already discussed the evidence demonstrating the presence of both Plaintiff and Defendant's products in Texas and California.   Additionally, the court has discussed that Plaintiff and Defendant both sell similar products.   The court has also discussed that several individuals who are involved in the folk art and religion markets would be confused if another company with "Tesoros" in its title sold goods that were similar to those offered by Plaintiff.

### E.   Plaintiff's Partial Motion for Summary Judgment

#### 1.   *Plaintiff's Trademark Infringement Claim*

Plaintiff moves for summary judgment on its trademark infringement claim.   The court has determined that a genuine dispute of material fact exists as to this claim, and Plaintiff's motion for summary judgment as it relates to this claim is denied.

2.      *Defendant's Affirmative Defenses*

Plaintiff also moves for summary judgment on Defendant's affirmative defenses of release, waiver, estoppel, and laches.  Defendant contends that Plaintiff delayed in raising a trademark infringement claim for over two years after it became aware of Defendant's existence.[8]  Defendant also contends that Plaintiff waived its right to claim trademark infringement when it failed to object to Defendant's trademark containing the word "tesoros" when it was published in the *Trademark Official Gazette*.

Plaintiff states that it received a copy of Defendant's "splash web page" in the mail in October 2009.  Plaintiff states that the words "please send catalog" were written on the paper.  Def.'s App. 226.  After Plaintiff received this, Williams called the number listed on the page but "did not receive an answer."  Pl.'s App. 10.  Based on this and his review of the website, he determined that Defendant was not a viable business.  *Id*.  In January 2012, Defendant approached Plaintiff.  *Id.* 11.  Plaintiff then sent multiple cease and desist letters to Defendant.  *Id*. 11.

Laches is an inexcusable delay that results in prejudice to the defendant.  *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 622 (5th Cir. 2013) (quotation marks and citation omitted).  Additionally, laches has three elements: (1) delay in asserting one's trademark rights; (2) lack of excuse for the delay; and (3) undue prejudice to the alleged infringer caused by the delay.  *Id*. (quotation marks and citation omitted).  Plaintiff contends that Defendant has not provided any evidence demonstrating undue prejudice; however, Defendant stated that since it operated as Tesoros Misticos for over two years, it would be greatly prejudicial to it if it could no longer continue operating under that name.

---

[8] Defendant contends that Plaintiff became aware of Defendant when it received a written request for a catalog in October 2009.

Plaintiff also asserts the "doctrine of gradual encroachment";[9] however, the Fifth Circuit case law to which Plaintiff cites does not actually apply this doctrine.  The only other case Plaintiff cites for support of this doctrine is decided by the Seventh Circuit.  The court declines to apply the doctrine at this time.  Plaintiff also contends that "federal courts refer to analogous state statutes of limitations to aid in determining what length of delay is excusable for purposes of laches."  Pl.'s Reply 6.  Given that there is a dispute regarding (1) Plaintiff's delay in asserting its trademark rights; (2) Plaintiff's excuse for the delay; and (3) the undue prejudice to Defendant caused by the delay, the court determines that a genuine dispute of material fact exists as to Defendant's affirmative defense of laches.

To prove equitable estoppel, Defendant must establish "at least intentional deception through concealment or inaction," or "gross negligence amounting to constructive fraud" by Plaintiff.  *Matter of Henderson*, 577 F.2d 997, 1001 (5th Cir. 1978) (citations omitted).  Defendant has only asserted two pieces of evidence to support its affirmative defenses: (1) Plaintiff, after receiving a catalog from Defendant, failed to take action to prevent Defendant's further use of its mark and (2) Plaintiff did not object to the listing of Defendant's mark in the Official Gazette of the Patent and Trademark Office.  The court finds that these two pieces of evidence do not establish any type of intentional deception or gross negligence, and the court determines that Defendant fails to establish that a genuine dispute of material fact exists as to its affirmative defense of estoppel.  Additionally, based on the court's review of these two pieces of evidence, the court finds no evidence for waiver or

---

[9] Plaintiff argues that "under this doctrine, a trademark owner may tolerate de minimis or low-level infringements and still have the right to act promptly when a junior user either gradually edges into causing serious harm or suddenly expands or changes its mark."  Pl.'s Reply to Def.'s Resp. to Pl.'s Mot for Partial Summ. J. 6, n. 17.  Plaintiff cites *Abraham v. Alphi Chi Omega, et. al.*, 708 F.3d 614 (5th Cir. 2013) to support this doctrine.

release, and the court determines that Defendant fails to establish that a genuine dispute of material fact exists as to these two affirmative defenses.

Accordingly, Plaintiff's motion for summary judgment as it relates to Defendant's laches defense will be denied, and Defendant will be allowed to assert this affirmative defense at trial. Plaintiff's motion for summary judgment as it relates to Defendant's estoppel, waiver, and release defenses will be granted, as Plaintiff is entitled to judgment as a matter of law as to these affirmative defenses. Defendant will not be allowed to assert these three defenses at trial.

## V.    Conclusion

For the reasons stated herein, the court **determines** that a genuine dispute of material fact exists as to Plaintiff's claims of federal trademark infringement, federal unfair competition, common law trademark infringement and unfair competition, and state trademark dilution and injury to business reputation. Accordingly, the court **denies** Defendants' Motion for Summary Judgment and **denies** Plaintiff's Motion for Partial Summary Judgment as to Plaintiff's trademark infringement claim. Additionally, the court determines that a genuine dispute of material fact exists as to Defendant's laches defense, and the court **denies** Plaintiff's Motion for Partial Summary Judgment as it relates to that defense. The court determines that a genuine dispute of material fact does not exist as to Defendant's estoppel, waiver, and release defenses, and the court **grants** Plaintiff's Motion for Partial Summary Judgment as it relates to those three defenses. Plaintiff is entitled to judgment as a mater of law on those three defenses, and Defendant will not be able to assert those defenses at trial. The court therefore **dismisses** Defendant's affirmative defenses of estoppel, waiver, and release. The court will issue an Amended Scheduling Order next month.

**It is so ordered** this 31st day of March, 2014.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge